UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | |
|---|---|
| C.A., by her next friends, G.A. and P.A., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MORGAN COUNTY BOARD OF ) <br> EDUCATION, et al., ) <br> ) <br> Defendants. ) | Civil Action No. 06-173-ART <br><br> **MEMORANDUM OPINION** <br> **AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Pending before the Court are two summary judgment motions: (1) Defendants' Motion for Summary Judgment, R. 27, to which a response, R. 36, a reply, R. 41, and a sur-reply, R. 43, were filed, and (2) Plaintiff's Motion for Summary Judgment, R. 30, to which a response, R. 33 & 34, was filed.

**I.   BACKGROUND**

This action arises out of Defendants' use of corporal punishment–in this case, spanking with a paddle–to discipline C.A. at her school on May 18, 2006. At the time of the incident, C.A. was twelve years old and attended Morgan County Middle School in West Liberty, Kentucky. R. 36 at 1. She had an I.Q. of 42, which qualified her for special education services under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq. Id.*

On May 18, C.A. was in the classroom of Tina Adams, a teacher at the school.[1] R. 38 at 28.

---

[1] This recitation of the facts relies on Plaintiff's version of the incident, as laid out in her response to Defendants' summary judgment motion. R. 36 at 1–5. Plaintiff does not include citations to the record to substantiate the events, but Defendants generally do not appear to challenge the basic chain of events as Plaintiff describes them. The Court will rely on Plaintiff's version and supplement it with

C.A. was "emotionally out of control." R. 36 at 1. In the morning, C.A., tore off some of her clothes, exhibited self-injuring behavior, kicked off her shoes, and was meowing like a cat. *Id.* at 1–2; *see also* R. 38 at 28–44 (describing C.A.'s behavior). Adams attempted to control C.A. but was unsuccessful. R. 36 at 2. As a result, Adams tried to contact C.A.'s mother and father, P.A. and G.A., respectively. R. 38 at 30–31. Adams was eventually able to reach P.A., *id.* at 42, who spoke to C.A. on the phone, but was unable to calm her down.[2] R. 24 at 11. P.A. then spoke to Terry Whitt, an assistant principal at C.A.'s school, and asked him to paddle C.A. *Id.* In addition, P.A. previously had given written permission for school officials to administer such corporal punishment to C.A. *See* R. 27, Ex. 1 (consent form). Whitt then contacted Darren Sparkman, the school's principal, so that he could administer the paddling. R. 36 at 3; R. 38 at 50.

Sparkman came to the classroom and administered the first paddling on C.A.'s clothed buttocks. R. 40 at 48–49. He used a paddle that was approximately twenty inches long and less than an inch thick. R. 40 at 23. After the first paddling, C.A. ran across the room and sat on the floor. *Id.* at 49. Adams then walked C.A. back to the desk where Sparkman was administering the punishment. *Id.* at 53. As C.A. was waiting for more paddling, she initially put her hands on a desk in front of her, but then moved them behind her, *id.*, presumably to soften the blow from the paddling. Adams and Whitt each took one of C.A.'s hands and held them to the desk to keep her from moving them behind her. *Id.* at 54. Sparkman then paddled her two more times.[3] *Id.* at 55.

---

citations to the evidence of record where necessary.

[2] P.A. was able to reach C.A.'s father, who was at home fixing his vehicle. R. 38 at 45.

[3] Sparkman testified that all students whom he paddles receive three paddlings. *Id.* at 52.

After the paddling, G.A. and C.A.'s grandmother arrived at the school. R. 23 at 29. C.A. told G.A. that her bottom hurt. *Id.* at 30. G.A. and the grandmother examined C.A. and saw "there was a blood red whelp across both cheeks of her butt." *Id.* At this point, G.A. and the grandmother left the school with C.A. and met C.A.'s mother. *Id.* at 33. G.A. then took C.A. to the Kentucky Cabinet for Health and Family Services, where photos of C.A.'s bottom were taken. *Id.* at 34. The Cabinet conducted an investigation into whether C.A. had suffered abuse as a result of the paddling, and the investigation concluded that abuse had occurred. R. 36 at 5. Additionally, based on the paddling, the Commonwealth's attorney presented the grand jury with a criminal charge as to Sparkman, but the grand jury did not return an indictment. R. 25 at 10, 12.

Subsequently, C.A., through her parents, filed suit in this Court against the Morgan County Board of Education and the following individuals in both their official and individual capacities: Joe Dan Gold (Superintendent of the Board), Darren Sparkman (principal), Terry Whitt (assistant principal), Diane Phipps (teacher who witnessed the incident), and Tina Adams (C.A.'s teacher). R. 1 at 1. C.A.'s Complaint asserts three causes of action: (1) § 1983 excessive force claim for violation of her civil rights, specifically her Fourteenth Amendment rights; (2) assault and battery; and (3) intentional infliction of emotional distress. *Id.* at 2–5. In her Answer to the Complaint, Defendant Adams asserted counterclaims for–what appears to be–defamation, intentional infliction of emotional distress, and malicious prosecution. R. 3 at 3–5. After the parties conducted discovery in this matter, they filed the summary judgment motions now pending before the Court, R. 27 & R. 30. Defendants seek summary judgment on Plaintiff's claims, R. 27, while Plaintiff seeks summary judgment on Tina Adams's claims, R. 30.

**II.     STANDARD**

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When determining if summary judgment is proper, the Court's function is not to weigh the evidence but to decide whether there are genuine factual issues for trial. *See id.* at 249. A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *See id.* at 255. While this Court must draw all inferences in a light most favorable to the nonmoving party, summary judgment may be granted "if the record, taken as a whole, could not lead a rational trier of fact to find for [the nonmoving] party." *McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 557 (6th Cir. 2003).

4

**III.     SECTION 1983 CLAIMS–OFFICIAL CAPACITY**

C.A.'s claims against the individual Defendants in their official capacities represent claims against the entity for which they are agents–the Morgan County Board of Education. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (citations omitted)); *Claybrook v. Birchwell*, 199 F.3d 350, 356 n.4 (6th Cir. 2000) ("An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents."). In light of the holding in *Monell v. Department of Social Services of New York*, 436 U.S. 658, 690 (1978), which permits local governments to be sued directly for damages and injunctive or declaratory relief, "[t]here is no longer a need to bring official-capacity actions against local government officials." *Graham*, 473 U.S. at 167 n.14. Therefore, these claims are redundant and are dismissed. *See Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1998) (dismissing § 1983 claim against teacher in his official capacity as redundant to the claim against the school district); *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 509 (6th Cir. 1996) (dismissing § 1983 claim against superintendent, principal, and school board member in their official capacities as redundant to the claim against the school board).

**IV.     SECTION 1983 CLAIMS–INDIVIDUAL CAPACITY**

Defendants argue that qualified immunity bars the individual-capacity claims asserted against them. When confronted with a claim of qualified immunity, a court first must ask the following question: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged

5

show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a violation can be shown, the next step is to ask whether the right was clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. In the instant case, Plaintiff has not demonstrated a violation of a constitutional right. Moreover, assuming for the sake of argument that such a violation is present, it certainly was not a violation of a clearly established right. Therefore, Defendants are entitled to summary judgment on the basis of qualified immunity with respect to Plaintiff's § 1983 claims.

   A.  *The Facts Alleged Do Not Show a Constitutional Violation*.

  To demonstrate that the paddling violated her Fourteenth Amendment substantive due process rights, C.A. "must prove that 'the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'" *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (quoting *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987)). However, taking the facts of this case in the light most favorable to C.A., this standard is not met because none of the relevant factors from the shock-the-conscience standard weigh in favor of a substantive due process violation.

  First, the only evidence of injury to C.A. is "a blood red whelp across both cheeks of her butt." R. 23 at 30; *see also* R. 24 at 29 (P.A. stating that C.A.'s grandmother told her there were raised spots and bruising). One can hardly call this a severe injury, and in fact, the Sixth Circuit has repeatedly found no constitutional violation in cases in which paddling caused virtually the same injury. In *Saylor v. Board of Education of Harlan County, Kentucky*, 118 F.3d 507, 511, 515 (6th

Cir. 1997), for example, the Sixth Circuit found no constitutional violation where a fourteen-year-old male student was left with a bruised and swollen buttocks after a teacher had paddled him five times for getting into a fight with another student. *See id.* at 511. Although the defendants conceded that the force used in administering the paddling was excessive, the court found that:

> The record developed after denial of the 12(b)(6) motion may well reflect carelessness or an unwise excess of zeal on [the teacher's] part, but we have no hesitancy in saying that, as a matter of law, the bruises caused by the five licks of the paddle on Randy Saylor's fully clothed buttocks were not so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism . . . that [the paddling] amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

*Id.* at 514–15 (quotation omitted) (all but first alteration in original). Similarly, the Sixth Circuit found no constitutional violation in *Archey v. Hyche*, Nos. 90-5631, 90-5863, 1991 WL 100586, at *1, *4 (6th Cir. June 11, 1991)[4], where a fifth-grade male student was left with severe bruises on the buttocks and an impaired gait after being paddled five times for humming in the boys' bathroom. The court found that the allegations did not describe excessive force at the level of brutality required under the shock-the-conscience standard, *see id.* at *3, and that the plaintiff's claims were "more aptly suited for state court remedies," *id.* at *4. Finally, the Sixth Circuit likewise declined to find a constitutional violation in *Darden v. Watkins*, No. 87-5331, 1988 WL 40083, at *1, *5 (6th Cir. Apr. 28, 1988), in which a teacher paddled a fourth-grade male student two to three times for not having his homework finished, and a doctor at the emergency room noted a three- to four-inch area of reddish-blue discoloration on the boy's buttocks.

It is true that in *Webb v. McCullough*, 828 F.2d 1151, 1159 (6th Cir. 1987), the Sixth Circuit

---

[4] Unpublished decisions of the Sixth Circuit are not binding under the doctrine of stare decisis. *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007). Accordingly, the Court considers such decisions for their persuasive value only. *See id.*

denied qualified immunity in a corporal punishment case involving minimal injuries, but that case is distinguishable from the one at hand. In *Webb*, a girl on a high school trip locked herself in a bathroom after the principal informed her that he was sending her home upon his discovery of a boy and alcohol in her room. *Id.* at 1153–54. The principal attempted to jimmy the lock, but when that failed he slammed the door with his shoulder three or four times. *Id.* at 1154. After the door gave way and knocked the girl against the wall, the principal slammed against the door one additional time, which knocked the girl to the floor, and then he grabbed her, threw her against the wall, and slapped her. *Id.* In reversing the district court's grant of the defendant's summary judgment motion, the Court concluded:

> Because the alleged blows were not struck in the school context, where the need for immediate disciplinary control . . . is at its greatest, because [the principal] was *in loco parentis* to [the plaintiff], and because it is possible that the blows were not disciplinary in nature, a trier of fact could find that under the circumstances, [the principal's] need to strike [the plaintiff] was so minimal or non-existent that the alleged blows were a brutal and inhumane abuse of [the principal's] official power, literally shocking to the conscience.

*Id.* at 1159. The Court also indicated the record did not reveal that "the blows arose other than in anger or from malice." *Id.* at 1158. In *Saylor*, 118 F.3d at 514, and in *Darden*, 1988 WL 40083, at *5, the Sixth Circuit distinguished *Webb* based on the absence of a disciplinary reason for the principal's slap, and the same distinction can be made in this case because it is undisputed that Defendants used corporal punishment on C.A. for disciplinary purposes. *See* R. 36 at 2 (stating that P.A. "instructed Adams that corporal punishment could be used to calm C.A. down").

Additionally, C.A. has failed to demonstrate that the force used was "disproportionate to the need presented." *Ellis*, 455 F.3d at 700. By Plaintiff's own admission, on the morning of the paddling she was "out of control," R. 36 at 9, and was not responding to her teacher's other attempts

8

to control her, *id.* at 2. Indeed, Tina Adams, C.A.'s teacher, testified that this was one of the worst behavior outbreaks she had ever seen by C.A. R. 38 at 44. As an apparent last resort, Adams called P.A., who instructed Adams that corporal punishment could be used to remedy the situation. R. 36 at 2 ("Realizing that C.A. was not responding to behavior interventions, Defendant Adams called the child's mother, P.A., who instructed Adams that corporal punishment could be used to calm C.A. down."). Given C.A.'s uncontrollable behavior, her parent's consent to corporal punishment, and the lack of any serious injury caused by the paddling, it cannot be said that either the decision to paddle C.A. or the force with which the paddling was carried out were disproportionate responses to C.A.'s behavior.

The shock-the-conscience standard lastly requires C.A. to demonstrate that Defendants were "inspired by malice or sadism rather than a merely careless or unwise excess of zeal," *Ellis*, 455 F.3d at 700, but she has failed to offer any evidence of such a motive. To the contrary, the evidence indicates that C.A. was paddled as a last resort, and then only at the behest of her parent, P.A. This simply does not permit a finding that the paddling was inspired by malice or sadism. *Cf. Saylor*, 118 F.3d at 513 (holding that against the background of parental consent, "caselaw leaves no room for doubt that [the principal] and [assistant principal] acted within the limits set by the Constitution when they allowed [child's] teacher to paddle him for fighting in the classroom").

The Court was unable to identify any decisions in the Sixth Circuit where a court held that paddling violated a student's substantive due process rights, nor has Plaintiff directed the Court to any such cases. It is true that two circuits other than the Sixth Circuit have found paddling to be a violation of a student's substantive due process rights, but those cases are distinguishable because they involved allegations that were significantly more serious than those in this case. *See Garcia*

9

*v. Miera*, 817 F.2d 650, 653, 658 (10th Cir. 1987) (alleging that a nine-year-old girl was held up by her ankles and paddled on her thighs several times until they bled, causing a permanent scar and, on a separate occasion, was paddled five times and pushed against a desk, which caused back pain for several weeks, severe bruises on her buttocks, and pain in her buttocks for two to three weeks); *Hall v. Tawney*, 621 F.2d 607, 615 (4th Cir. 1980) (alleging that a teacher shoved the plaintiff into a desk and hit her repeatedly and violently with a paddle, which caused a ten-day admission to a local hospital where she was treated for traumatic injury to her hip, thigh, and buttocks and which caused possible permanent injuries to her lower back and spine). Outside the paddling context, other circuit courts have found substantive due process violations where there were similarly egregious allegations of serious physical injury, but this case involves no such allegations. *See Peterson v. Baker*, 504 F.3d 1331, 1338 (11th Cir. 2007) (summarizing cases and concluding that "constitutional violations do not arise unless the teacher inflicts serious physical injury upon the student"). Thus, there is no case law in any of the circuit courts that would call into question the conclusion that C.A.'s substantive due process rights were not violated.

Plaintiff attempts to overcome Defendants' claims to qualified immunity by pointing to deposition testimony regarding the following: (1) a doctor stating that normal paddling is not meant to produce whelps and discoloration of the skin; (2) a family service worker with the Kentucky Cabinet for Families and Children stating she believed the paddling constituted child abuse; (3) a social services specialist for the Cabinet for Families and Children stating she believed the paddling was inappropriate and excessive; (4) a social worker supervisor for the Cabinet for Families and Children stating she believed the paddling was unreasonable and constituted neglect; and (5)

Defendant Diane Phipps stating she believed the paddling was excessive.[5] R. 43 at 2–4. Based on this testimony, Plaintiff argues there is sufficient evidence to submit her substantive due process claim to the jury. *Id.* at 4–5.

The Court disagrees. This testimony does not introduce any new facts that would raise material questions of fact; rather, the testimony essentially constitutes the opinion of these individuals regarding the severity of the paddling. For example, the social worker testified that the paddling was abusive because of the bruising it left. *Id.* at 2. In other words, she viewed the facts of this case and concluded that the paddling constituted abuse. That opinion may very well may be correct in the social service field, but it does not change the nature of C.A.'s injury, which is virtually identical to the injuries incurred in *Saylor*, *Archey*, and *Darden*. If the Sixth Circuit found there was no violation of substantive due process rights in those three cases, it only stands to reason that the same result should be reached here. Moreover, in relying on the social worker's opinion, Plaintiff effectively asks this Court to make an apples and oranges comparison by equating a social service definition of child abuse with a substantive due process violation.

In addition to the above testimony, Plaintiff, without any support, suggests that the Court should take into consideration her "mental status," *i.e.*, her low IQ, when determining whether her substantive due process rights were violated. R. 36 at 9. As a general matter, the Court does not quarrel with Plaintiff's argument that it should consider her mental status when determining whether the shock-the-conscience standard is satisfied, especially given that this standard is rather indefinite. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996) (referring to the shock-the-conscience standard as fuzzy). Even according this factor some significance, it does not

---

[5] Plaintiff has yet to file these depositions in the record.

outweigh the multiple factors pointing to no due process violation: the absence of both a severe injury and malice or sadism on the part of Defendants, the demonstrated need for the corporal punishment, and P.A.'s consent to the paddling. Indeed, other courts have found no substantive due process violation in spite of the plaintiff suffering from a disability. *See Fessler v. Giles County Bd. of Educ.*, No. 1-00-0120, 2005 WL 1868793, at *1, *16 (M.D. Tenn. July 27, 2005) (holding that an eight-year-old autistic student's substantive due process rights were not violated when a teacher's aide kicked him and threw him to the ground because he did not suffer a severe injury); *Brown ex rel. Brown v. Ramsey*, 121 F. Supp. 2d 911, 912, 922–24 (E.D. Va. 2000) (holding that the substantive due process rights of a first-grade plaintiff who suffered from Asperger's Syndrome–which is similar to autism–were not violated when his teacher placed him in a restraint hold because he did not suffer a severe injury, the force was not disproportionate to the need, and the defendants were not inspired by malice or sadism). *But see Dockery v. Barnett*, 167 F. Supp. 2d 597, 604 (S.D.N.Y. 2001) (noting the significance of the plaintiffs' autism, which made them more vulnerable than other children, in denying summary judgment on the defendants' substantive due process claim).

Because the Court concludes that Defendants did not violate C.A.'s Fourteenth Amendment rights, her § 1983 claim fails, and it is unnecessary to analyze whether C.A.'s Fourteenth Amendment rights were clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). However, even if C.A. could establish a constitutional violation, her § 1983 claim still fails because C.A.'s Fourteenth Amendment rights were not clearly established in the situation this case presents.

  B. *C.A.'s Substantive Due Process Rights Were Not Clearly Established.*

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Plaintiff argues that students had a clearly established right to be free from physical abuse at school and that the shock-the-conscience standard was the clearly established test for measuring such rights. However, the second prong of *Saucier* requires more than that a general constitutional right was clearly established in the abstract; rather, this inquiry must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201.

As indicated above, Plaintiff did not cite, and the Court did not find, any Sixth Circuit case holding that a teacher's paddling of a student constituted a substantive due process violation. While the Fourth Circuit in *Hall* and the Tenth Circuit in *Garcia* found the paddling in those cases to constitute a violation of the plaintiff's substantive due process rights, the allegations there were significantly more serious than those in this case. Moreover, when determining whether a right is clearly established, the Sixth Circuit ordinarily will not look beyond Supreme Court and Sixth Circuit precedent. *Cullinan v. Abramson*, 128 F.3d 301, 311 (6th Cir. 1997). In the absence of such case law involving the circumstances of this case, C.A.'s substantive due process rights were not clearly established.

**V. Other § 1983 Claims**

Though not clear from the Complaint, in her response to Defendants' summary judgment motion C.A. proposes different theories of liability under § 1983 for the individual Defendants who were not directly involved in the paddling. As described above, Sparkman paddled the child while Whitt and Adams each held one of C.A.'s hands. That leaves Diane Phipps, a teacher at the school,

13

and Joe Dan Gold, the superintendent of the Morgan County Board of Education. With respect to their involvement, Phipps observed the paddling, R. 23 at 66, while Gold was not present during the paddling, *id.* at 64, and thus became involved only after it occurred. Because of their lack of direct involvement, C.A. seeks to hold Gold liable under a supervisory liability theory and Phipps liable for failing to intervene and stop the paddling. R. 36 at 13–15. Additionally, C.A. seeks to hold the Morgan County Board of Education liable for its failure to train officials in administering corporal punishment. *Id.* at 12.

As explained above, the Court concludes that paddling C.A. did not violate her substantive due process rights. For this reason, Gold and Phipps cannot be held liable under a theory of supervisory liability or failure to intervene, nor can the county school board be held liable for a failure to train. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of unconstitutionally excessive force is quite beside the point."); *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) ("Because McQueen also has not pointed to unconstitutional conduct by any other employee supervised by Hughes, it necessarily follows that the supervisory liability claim against Hughes must fail."); *Bukowski v. City of Toledo*, 326 F.3d 702, 712–713 (6th Cir. 2003) ("Because [the City] can only be held liable if there is a showing of liability on the part of its officials, the determination that the City's officials did not violate the plaintiffs' constitutional rights resolves the claim against the City as well."); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983."); *Fessler v. Giles County Bd. of Educ.*, No. 1-00-0120, 2005 WL 1868793, at *16

(M.D. Tenn. July 27, 2005) (stating that because a teacher did not violate a student's substantive due process rights, the student's claims against the school superintendent and the county school board for failure to train and supervise fail).

## VI.  STATE LAW CLAIMS

In addition to her § 1983 claim, C.A. asserted state law causes of action for assault, battery, and intentional infliction of emotional distress. R. 1 at 2–5. Defendant Adams also counterclaimed with various state law claims. R. 3 at 3–5. In light of the Court's conclusion to dismiss all of C.A.'s § 1983 claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and will dismiss those claims without prejudice. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Gaff v. FDIC*, 814 F.2d 311, 319 (6th Cir. 1987) ("It is generally recognized that where, as in this case, federal issues are dismissed before trial, district courts should decline to exercise jurisdiction over state law claims.").

## VII.  CONCLUSION

Accordingly, it is hereby **ORDERED** as follows:

(1)  Defendants' Motion for Summary Judgment, R. 27, with respect to Plaintiff's § 1983 claims (Count I) is **GRANTED**, and those claims are **DISMISSED WITH PREJUDICE**.

(2)  Defendants' Motion for Summary Judgment, R. 27, with respect to Plaintiff's state law claims (Counts II & III) is **DENIED**, and those claims are **DISMISSED WITHOUT PREJUDICE**.

(3)  Plaintiff's Motion for Summary Judgment, R. 30, is **DENIED**, and those claims are **DISMISSED WITHOUT PREJUDICE**.

(4)  The Clerk shall **STRIKE** this matter from the Court's docket.

This the 22nd day of September, 2008.

Signed By:
*Amul R. Thapar* AT
United States District Judge